**Edith A. SALLEE, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 5882.

Court of Civil Appeals of Texas, Waco.

Nov. 9, 1978.

Michael A. Robertson, Thorne, Thorne & Robertson, Inc., Grand Prairie, for appellant.

Winston L. Borum, Gordon H. Rowe, Jr., Gardere, Porter & DeHay, Dallas, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Sallee from a take-nothing judgment in a workmen's compensation case.

Edith Sallee was an employee of K–Mart and Texas Employers was the insurance carrier. Mrs. Sallee alleged that on April 10, 1976 while she was carrying a full pail of water to water plants in the garden section of the store she was injured in her lower back; that she worked for approximately 30 minutes after the injury and then left the store for the day; that when she reached home the pain increased and she went to Dr. Segovia on April 12, 1976, who diagnosed her condition as "aggravation of acute back problem"; that Dr. Segovia prescribed bed rest at home and then admitted her to the hospital on April 20, where she remained until May 3; her diagnosis at that time was acute lumbo sacral strain; that she suffered severe back pain from April 10 to May 3, which prevented her from doing any work; that she still suffers from disabling pain but has found employment; that if any previous injury or condition was in any way involved in causing her incapacity and disability, that such injury or condition was aggravated and made worse by the injury of April 10, 1976, which injury is a producing cause of her incapacity.

Trial was to a jury which answered Issue 1 as follows:

"Issue 1. Did plaintiff Edith A. Sallee receive an injury on or about April 10, 1976?

"Answer: No".

The trial court instructed the that "injury means damage or harm to the physical structure of the body * * * or the incitement acceleration or aggravation of any disease, infirmity or condition, previously or subsequently existing, by reason of such damage or harm."

Other issues submitted were conditioned on an affirmative answer to Issue 1 and were not answered. The trial court rendered judgment on the verdict that plaintiff take nothing.

Plaintiff appeals on 2 points contending:

The answer of the jury to Issue 1 is against the great weight and preponderance of the evidence so as to be manifestly unjust.

We must weigh all the evidence in the case in determining this contention. *In re King's Estate*, Tex., 244 S.W.2d 660.

Plaintiff testified that on the evening of Saturday April 10, 1976, she was instructed

by her supervisor at K–Mart to water the plants in the patio department; she was told to use a plastic pail about 18 inches high which she had to carry half way across the store; she held the pail with both hands in front of her about waist high because it did not have a handle; while carrying the water plaintiff felt a terrific pull in her lower back and could hardly straighten up; it was a very bad burning sensation; the store closed shortly and plaintiff went home and went to bed; she called her doctor, Dr. Segovia, who told her to come in Monday morning; Dr. Segovia had treated her for a back injury she received in May 1975; Dr. Segovia prescribed pain pills, told her not to do anything, and put her in the hospital the following Thursday; where she was put in traction, given therapy and sedated heavily for over two weeks; after her release from the hospital she continued to see Dr. Segovia; he later released her to try to find work; that prior to her April 10, 1976, injury she suffered a vertebra fracture, was treated by Dr. Segovia but was finally released without restriction to seek work; she had no limitation on her ability to work when released by Dr. Segovia prior to going to work at K–Mart; today she can barely get through the day, can't lift and is limited in what she can do; has a lot of pain in her back; she now works at a Senior Citizens Home; where she does no lifting or stooping; she is getting better, but hurts much of the time; she hurt her back the first time on May 1, 1975, while working as a nurses' aide at a nursing home while lifting a man from his chair; after this injury she went to the hospital; where she was treated by Dr. Segovia; Dr. Segovia released her around the first of January before she went to work at K–Mart in April; January 1976 was the last time she had seen Dr. Segovia until after her injury at K–Mart; her back hurt between January and April 1976, but not like it did after she was hurt at K–Mart; between January and April 1976 she was not treated by any doctors; when she got the job at K–Mart she did not tell them she had a back problem or had an injury the year before; the doctor had released her to go back to work and there was no need in

bringing it up; she had worked at K–Mart a week when she was injured; she hurt her back in the same place it had been hurt before; she had no pain for about 3 months before her injury at K–Mart; the injury occurred about 9:30; she got off work at 10:00; she told no one at K–Mart about having injured her back that night, but reported her injury to K–Mart the following Monday.

Carl Sallee, plaintiff's husband, testified plaintiff prior to her injury at K–Mart had some pain, but was beginning to get back to a normal routine; that when she came home the night of April 10 she was crying and hurting; that he called the doctor and got her in to see him Monday; that she was hospitalized on Thursday and she stayed two weeks.

Mrs. O'Neal, personnel officer at K–Mart, testified plaintiff's application for employment listed no handicaps or health problems; that the first time she heard plaintiff had an accident was some two weeks after April 10th.

Mrs. Rowan, apartment manager where plaintiff lives testified she came by plaintiff's apartment after she got home on April 10th and found her crying; observed a knot on her back; that she was laying down; and was really sick.

Mrs. Kaplan, supervisor at the Nursing Home plaintiff works at now, testified she employed plaintiff as a nurses' aide; that plaintiff had not said anything to her about any kind of back problem or any kind of disability from doing work; that her work is on the heavy side; that plaintiff has not complained to her of any physical problem; that she is an excellent employee; that she first learned of plaintiff's back problem when she said she had to be off to go to court in the instant case; that plaintiff lifts patients, containers of bath water; that her job is physically demanding.

Ms. Dunn, Administrator of the Nursing Home where plaintiff is presently employed, testified plaintiff's application for employment lists no back problems or other ailments; that the application form specifi-

cally asks about back problems to which plaintiff answered "None"; that plaintiff was an excellent employee.

Dr. Segovia testified he was a physician, MD, orthopedic surgeon; that he saw plaintiff in May 1975 and diagnosed a compression fracture of the first lumbar; that thereafter he released her to go to work; that he saw her on April 12, 1976; and diagnosed "aggravation of acute back problems; hospitalized her for two weeks; that her charges were $1267; that she was hospitalized for the May 1975 illness; that he saw her in follow-up exams on May 22, June 27, July 18, August 7, August 26 and September 25, of 1975; that she continued to complain of pain in her back", that she was readmitted to the hospital on September 27, 1975 for further treatment; that he examined her on November 13, and December 4, 1975, and on January 8, and 20, 1976, and that she continued to complain of back pain; that he explained to her she would have to live with some soreness in her back from her May 1975 injury; that on April 1, 1976 she visited his office in connection with her prior back injury and complained of pain and some burning in her lower back; that he prescribed medication on April 1, 1976, and made an appointment for her to return for treatment on April 15, 1976; that from May 1975 to April 1, 1976 plaintiff failed to respond to treatment as well as he would expect; that her permanent disability from the May 1975 back fracture was 5%; that he saw plaintiff on April 12, 1976; that she was ambulatory; that he noted she had reaggravated her back problem at K–Mart the day prior, that such notation was based on what plaintiff told him and on his examination; that plaintiff told him on April 12, 1976 she had low back pain; that he X-rayed her back; that the new X-rays did not reveal a new fracture or dislocation; that upon her hospitalization thereafter "had no objective findings" and her only subjective complaint was low back pain; that he had seen plaintiff on June 17, and July 8, 1976 and that he prescribed no medication and that she had normal straight leg raising and normal range of motion in her back; that the aggravation plaintiff reported on April 12, 1976 did not increase her disability over what it was after the May 1975 back injury; that she had a 5% permanent disability after April 12, 1976, and that such 5% disability is solely related to her back fracture of May 1975; that he dismissed plaintiff from treatment on July 8, 1976; that in his April 12, 1976 examination of plaintiff he made no objective findings.

The evidence here is conflicting and the jury could well and properly have answered Issue 1 in the affirmative, but they did not.

Plaintiff denied seeing the doctor for some 3 months prior to April 10, 1976, when in fact she had seen him several times including on April 1, and had an appointment to see him on April 15, 1976. There is evidence she was having back pain during this entire period. There were no witnesses to her injury, and she did not report it until the following Monday morning. She failed to note back problems on her applications for employment at K–Mart and elsewhere.

In such state of the record we cannot say the jury's answer to Issue 1 was so contrary to the great weight of the evidence as to be manifestly unjust. *In re King's Estate,* supra; *Mayfield v. Employers Reinsurance Corp.,* (Tex.Civ.App. Tyler) NRE, 539 S.W.2d 398; *Reed v. Aetna Casualty & Surety Co.,* (Tex.Civ.App. Beaumont) NRE, 535 S.W.2d 377.

Plaintiff's points and contentions are overruled.

AFFIRMED.